16-986-cv
John v. Whole Foods Mkt. Grp., Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: October 17, 2016          Decided: June 2, 2017)

Docket No. 16-986-cv

————————————————

SEAN JOHN, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant*,

JOSEPH BASSOLINO, individually and on behalf of all others similarly situated,

*Consolidated Plaintiff,*

v.

WHOLE FOODS MARKET GROUP, INC.,

*Defendant-Appellee.**

————————————————

Before:

KEARSE, JACOBS, and LOHIER, *Circuit Judges.*

Plaintiff-appellant Sean John brings this putative class action alleging that grocery stores in New York operated by defendant-appellee Whole Foods Market Group, Inc. systematically overstated the weights of pre-packaged food products and overcharged customers as a result.  The District Court dismissed John's suit at the pleading stage for lack of Article III standing.  Because we

---

* The Clerk of Court is directed to amend the caption as set forth above.

conclude that John plausibly alleged an injury in fact, we **VACATE** and **REMAND** for further proceedings consistent with this opinion.

DOUGLAS G. BLANKINSHIP, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, White Plains, NY, *for Plaintiff-Appellant*.

DAVID E. SELLINGER (Gregory J. Casas, Elliot H. Scherker, Brigid F. Cech Samole, *on the brief*), Greenberg Traurig, LLP, New York, NY, Austin, TX, Miami, FL, *for Defendant-Appellee*.

LOHIER, *Circuit Judge*:

Sean John filed a putative class action alleging that New York City grocery stores operated by Whole Foods Market Group, Inc. systematically overstated the weights of pre-packaged food products and overcharged customers as a result. The United States District Court for the Southern District of New York (Engelmayer, J.) granted Whole Foods' motion to dismiss John's complaint for lack of Article III standing because he failed to allege a sufficient injury in fact. Because we conclude that John plausibly alleged an injury in fact, we **VACATE** and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

Because John appeals from a judgment dismissing the complaint on the pleadings, we accept as true the facts alleged in the complaint, "and we may

consider documents incorporated into or integral to the complaint." <u>WC Capital Mgmt., LLC v. UBS Sec., LLC</u>, 711 F.3d 322, 325 (2d Cir. 2013).

1. <u>Alleged Facts</u>

In 2014 and 2015 John "routinely shopped" at two Whole Foods stores in Manhattan and made "regular[] purchase[s]" of pre-packaged products, including "pre-packaged cheese and cupcakes approximately one or two times per month." "Pre-packaged" food products are those that Whole Foods weighs and prices prior to shelving, assigning a price to each package based on the weight of the food.

Whole Foods routinely inflated the weight listed on the labels of pre-packaged products, and, as a result of the mislabeling, overcharged unwitting customers for pre-packaged food. The complaint does not identify a specific food purchase as to which Whole Foods overcharged John. Instead, it more generally describes pervasive overcharging of pre-packaged food throughout Whole Foods' stores in New York City. But the complaint does attach a June 2015 press release of the New York City Department of Consumer Affairs (the "DCA") entitled "Department of Consumer Affairs Investigation Uncovers Systemic Overcharging for Pre-packaged Foods at City's Whole Foods." As its

3

title suggests, the press release announced the DCA's investigation of overcharging by Whole Foods and its preliminary findings that Whole Foods' New York City stores "routinely overstated the weights of its pre-packaged products—including meats, dairy and baked goods." App'x 26. The press release elaborated on these findings:

> DCA tested packages of 80 different types of pre-packaged products and found all of the products had packages with mislabeled weights. Additionally, 89 percent of the packages tested did not meet the federal standard for the maximum amount that an individual package can deviate from the actual weight, which is set by the U.S. Department of Commerce. The overcharges ranged from $0.80 for a package of pecan panko to $14.84 for a package of coconut shrimp.

Id.

The DCA's findings, the press release continued, "point to a systematic problem with how products . . . are weighed and labeled" and "suggest[] that individual packages are routinely not weighed or are inaccurately weighed, resulting in overcharges for consumers." Id. Finally, according to the press release, the DCA planned to "further evaluate" Whole Foods' "compliance with City and state laws" and estimated that the "potential number of violations that Whole Foods faces for all pre-packaged goods in the NYC stores is in the thousands." App'x 27.

4

The DCA's investigation leading up to the June 2015 press release took place from fall 2014 to winter 2015, the same period in which John allegedly made monthly purchases of cheese and cupcakes. The investigation focused on the eight Whole Foods stores operating in New York City during that period, which included the two stores that John patronized. Whole Foods has since confirmed that cheese and cupcakes were among the pre-packaged products that the DCA alleged were mislabeled with overstated weights.

2. Procedural History

In filing this class action, John alleged violations of sections 349 and 350 of the New York General Business Law as well as a claim for unjust enrichment.[1] He sought compensatory damages, refunds, punitive damages, injunctive relief, attorneys' fees, and costs. The proposed class includes all persons who purchased at least one of fourteen types of pre-packaged product within the six years prior to the filing of the complaint from a Whole Foods store in New York State.

---

[1] This case was originally filed in New York State court, but Whole Foods successfully removed it to federal court pursuant to the Class Action Fairness Act. See 28 U.S.C. § 1332(d).

The District Court granted Whole Foods' motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6), holding that John lacked Article III standing because he failed to plausibly allege that he was personally overcharged by Whole Foods for a specific purchase. In re Whole Foods Mkt. Grp., Inc. Overcharging Litig., 167 F. Supp. 3d 524, 537 (S.D.N.Y. 2016). Again citing John's failure to allege that he personally had been overcharged, the District Court explained that, even if John had standing, it would grant Whole Foods' motion to dismiss the complaint for failure to state a claim upon which relief could be granted, and that amending the complaint would be futile. Id. at 538–39. Despite its conclusion that John lacked standing, the District Court dismissed the complaint with prejudice. Id. at 539.

This appeal followed.

**DISCUSSION**

As a preliminary matter, we again "note that where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 54 (2d Cir. 2016). "Such a dismissal is one for lack of subject matter jurisdiction." Id. And "without jurisdiction, the district court lacks the power to

6

adjudicate the merits of the case" or "dismiss a case with prejudice." Id. at 54–55

(quotation marks omitted). "Thus, if we were to agree with the [D]istrict

[C]ourt's conclusion that the Complaint failed to show Article III standing," we

would remand with instructions that the judgment be "amended to provide that

the dismissal is without prejudice." Id. at 55.

We need not do so, however, because we conclude that John's complaint

plausibly alleges that he has Article III standing and therefore vacate the

dismissal and remand for further proceedings.

To satisfy the "'irreducible constitutional minimum' of standing," a

plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision." Spokeo, Inc. v. Robins, —U.S.—, 136 S. Ct. 1540,

1547 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). Each

element of standing "must be supported . . . with the manner and degree of

evidence required at the successive stages of the litigation," and at the pleading

stage, "general factual allegations of injury resulting from the defendant's

conduct may suffice." Lujan, 504 U.S. at 561. And, because Whole Foods mounts

only a "facial" challenge to John's allegations of standing, John bears no

7

evidentiary burden at the pleading stage.  Carter, 822 F.3d at 56.  As we

explained in Carter:

> When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the "Pleading"), the plaintiff has no evidentiary burden.  The task of the district court is to determine whether the Pleading "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue."  On appeal, we review the district court's decision on such a facial challenge de novo, "accept[ing] as true all material [factual] allegations of the complaint," and "draw[ing] all reasonable inferences in favor of the plaintiff."

Id. at 56–57 (citations omitted).

The District Court dismissed John's suit on the ground that he failed to

satisfy the injury-in-fact requirement.  We have repeatedly described that

requirement as "a low threshold," WC Capital Mgmt., 711 F.3d at 329 (quoting

Ross v. Bank of Am., N.A., 524 F.3d 217, 222 (2d Cir. 2008)), which "helps to

ensure that the plaintiff has a personal stake in the outcome of the controversy,"

Susan B. Anthony List v. Driehaus, —U.S.—, 134 S. Ct. 2334, 2341 (2014)

(quotation marks omitted).  Injury in fact consists of "an invasion of a legally

protected interest that is concrete and particularized and actual or imminent, not

conjectural or hypothetical."  Spokeo, 136 S. Ct. at 1548 (quotation marks

omitted).

8

John argues that his complaint adequately and plausibly alleges that Whole Foods overcharged him at least once for pre-packaged cheese and cupcakes. Here, no one disputes that overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact. See Carter, 822 F.3d at 55 ("Any monetary loss suffered by the plaintiff satisfies this element; [e]ven a small financial loss suffices." (quotation marks omitted)). Rather, the dispute arises from the following: in addition to the allegation that he made monthly purchases of Whole Foods pre-packaged cheese and cupcakes, the critical basis for John's claim that he was overcharged is the DCA's press release announcement that 89 percent of Whole Foods' pre-packaged products tested by the DCA were mislabeled, and the press release's conclusion that the mislabeling was "systematic" and "routine[]." We consider whether the press release together with John's monthly purchases provides a plausible basis to conclude that John overpaid Whole Foods for pre-packaged cheese or cupcakes during the period alleged in the complaint.

The District Court was unswayed by the statistic that 89 percent of all packages tested by the DCA failed to satisfy federal labeling standards. Relying on our statement in Shipping Financial Services Corp. v. Drakos that

9

"jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," 140 F.3d 129, 131 (2d Cir. 1998), the District Court believed that John's complaint failed adequately to allege that he personally overpaid for any specific purchase. Our broad statement in Drakos relied on a more circumscribed statement by the Supreme Court in Norton v. Larney that appeared to prohibit drawing "argumentative" inferences favorable to the party asserting jurisdiction. 266 U.S. 511, 515 (1925). To the extent Norton shunned the drawing of inferences in favor of a plaintiff's standing at the pleading stage, the Supreme Court more recently has held that "general factual allegations of injury . . . may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan, 504 U.S. at 561 (quotation marks omitted). When the defendant asserts a "facial" challenge to standing, therefore, it remains the case that courts should continue to draw from the pleadings all reasonable inferences in the plaintiff's favor and "are to 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Carter, 822 F.3d at 58 (quoting Lujan, 504 U.S. at 561); see Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).

10

Here, the District Court did not draw all reasonable inferences in John's favor. To the contrary, it faulted the complaint for failing to allege "an investigative finding of ubiquitous, systematic over-weighting at Whole Foods' New York City stores," "invariable incidents of this deceptive labeling practice," and "across-the-board overcharging so as to embrace, other than by conjecture, the cheese and cupcakes . . . that John . . . occasionally bought in 2014 and 2015." 167 F. Supp. 3d at 534. The District Court was also troubled by the absence of allegations describing the DCA's methodology. But the DCA's press release asserted that the mislabeling by Whole Foods was "systematic" and "routine[]," and a facial attack on the pleadings is not the proper stage to determine whether the DCA's sampling methods justified its declaration of widespread overcharging. At the pleading stage, John need not prove the accuracy of the DCA's findings or the rigor of its methodology; he need only generally allege facts that, accepted as true, make his alleged injury plausible. See Lewert v. P.F. Chang's China Bistro, Inc., 819 F.3d 963, 968 (7th Cir. 2016) (identifying injury in fact based in part on plausible allegation that restaurant customer's data was stolen, where restaurant sent notice of data breach to all of its diners nationwide but did not know which specific customers were affected). John may ultimately

11

be unable to show he was injured under the more demanding standards applicable at summary judgment or trial. Of course, we understand the District Court's concern that John faces what may be significant evidentiary obstacles on the merits; but targeted discovery might show whether those obstacles can be surmounted. For present purposes, John has plausibly alleged a nontrivial economic injury sufficient to support standing: according to the DCA's investigation, Whole Foods packages of cheese and cupcakes were systematically and routinely mislabeled and overpriced, and John regularly purchased Whole Foods packages of cheese and cupcakes throughout the relevant period. Taking these allegations as true and drawing all reasonable inferences in his favor, it is plausible that John overpaid for at least one product. John's complaint thus satisfies the "low threshold" required to plead injury in fact. WC Capital Mgmt., 711 F.3d at 329 (quotation marks omitted).

Our decision in Amidax Trading Group v. S.W.I.F.T. SCRL is not to the contrary. In that case, Amidax accused the Society for Worldwide Interbank Financial Telecommunication ("SWIFT") of turning over information about Amidax's financial transactions, contained in SWIFT's database, in response to requests from the federal government related to a terrorism investigation. 671

12

F.3d at 143–44.  Because Amidax had not established that the entire SWIFT database was turned over, we required that Amidax allege at least that its customers "so frequently utilized the SWIFT network to transfer funds that it is plausible, not just possible, that Amidax's data was handed over."  Id. at 147–48. We affirmed the dismissal of the complaint because Amidax had failed to provide any such allegations of past frequency of use of the SWIFT network.  Id. at 148.  In doing so, however, we did not foreclose the possibility that injury in fact could be adequately pleaded with plausible allegations of a likelihood of past injury.

For these reasons, we conclude that John has plausibly alleged that he suffered an injury in fact by pleading both the frequency of his purchases and the systematic overcharging of pre-packaged foods at the Whole Foods stores he patronized.  See Carter, 822 F.3d at 56.

## CONCLUSION

We **VACATE** the District Court's judgment and **REMAND** for further proceedings consistent with this opinion.